## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 14-cv-20751-GOODMAN

JEAN MARIE VORBE and V & F
CONSTRUCTION, S.A. a/k/a VORBE ET
FILS,

      Plaintiffs,

v.

PATRICK MORISSEAU and
LETRANSPORTEUR, LLC,

      Defendants.

_____/

### PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiffs, Jean Marie Vorbe ("Vorbe") and V & F Construction, S.A. a/k/a Vorbe et Fils

("V&F") (collectively, "Plaintiffs"), by and through undersigned counsel and pursuant to this

Court's July 31st Order [ECF No. 70], move for leave to take jurisdictional discovery in response

to the late-filed reply brief ("Reply") and affidavit ("Affidavit") [ECF Nos. 56, 57] by

Defendant, Patrick Morisseau ("Morisseau").

### I.  Introduction

It was not until this Court permitted Morisseau's late Reply and Affidavit [ECF No. 70]

that Morisseau first mounted a procedurally sufficient (albeit, substantively unavailing)

challenge to jurisdiction.   Specifically, Morisseau's motion to dismiss [ECF No. 24] ("MTD")

was not accompanied by an affidavit or other verified evidence; and as Plaintiffs noted in their

response in opposition [ECF No. 34, p. 3] ("Response"), "[t]o contest a complaint's

jurisdictional allegations, or to challenge the presence of minimum contacts, the defendant **must**

file an affidavit." *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1321 (S.D.

Fla. 2010) (emphasis added); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (same).  Because of that fatal flaw, jurisdictional discovery *at that point* was unnecessary, and would have been a waste of time and resources.[1]

Now that Morisseau has been granted a "do-over", Plaintiffs must be allowed to take jurisdictional discovery to provide this Court with counter-evidence establishing "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 775 (1984).  Indeed, "Eleventh Circuit precedent indicates that **jurisdictional discovery is highly favored**," *Steinberg v. Barclay's Nominees (Branches) Ltd.*, 04-60897-CIV, 2007 WL 4287662, *2 (S.D. Fla., Dec. 5, 2007) (emphasis added),[2] "lest the defendant defeat [] jurisdiction . . . by withholding information on its contacts with the forum." *Exhibit Icons, LLC v. XP Companies*, LLC, 07-80824-CIV, 2008 WL 616104, *1 (S.D. Fla., Mar. 3, 2008) (internal

---

[1] *Cf. Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1144 (S.D. Fla. 2007) (denying request for jurisdictional discovery because plaintiffs failed to seek leave during the six months of written and oral briefing, despite defendants' lengthy motion, reply and "**several declarations**.") (Emphasis added).

[2] Citing *Eaton v. Dorchester Development, Inc.*, 692 F.2d 731 (11th Cir. 1982); *Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a meaningful ruling can be made); *Blanco v. Carigulf Lines*, 632 F.2d 656, 657 (5th Cir. 1980) (dismissal was error where defendants had not responded to plaintiff's interrogatories); *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248-49 (5th Cir. 1976) (held "that the district court acted too drastically in entering its order of dismissal without giving plaintiff a further opportunity for discovery" though defendants had answered 184 interrogatories); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir. 1973) (en banc) (denial of jurisdictional discovery reversed though the plaintiff had agreed in writing that discovery would not take place until after the district court had ruled on defendants' motion to dismiss); *Washington v. Norton Manufacturing Co.*, 588 F.2d 441, 443 (5th Cir.), cert. denied, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979) *cf. Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 7 (11th Cir. 1999).

quotations omitted).

Plaintiffs firmly believe that Morisseau manifestly and purposefully targets Florida residents on his website, www.touthaiti.com ("Website"), to the exclusion of nearly all other United States jurisdictions.[3]   Florida has the largest number of people of Haitian ancestry living in the United States by a wide margin – a fact specifically noted on Morisseau's own Website, and corroborated by the U.S. Census.  [ECF No. 34, pp. 5-6].  Naturally, wanting to capture that substantial audience, the Website dedicates an entire section to the "Diaspora" – *i.e.*, Haitians living abroad – and bills itself as the "Site d'information d'Haiti **et de la diaspora**" [ECF 34, p. 5].[4]   *See* http://www.touthaiti.com/diaspora.  For purposes of evading this Court's jurisdiction, however, Morisseau sheepishly states that he does not purposefully direct his articles to "any specific state or country outside Haiti."   [ECF No. 64-1, ¶11].   He also questions, in a roundabout, "where's the evidence?" kind of way, whether anyone *in Florida* actually accessed the defamatory article in question.   [ECF No. 57, pp. 2-3].   That, among other things, is precisely what Plaintiffs intend to discover and demonstrate to the Court.

## II.  Discovery Sought

Of primary importance to Plaintiffs are the Website's visitor analytics, which would show the geographic location of the Website's visitors.  If, as Plaintiffs suspect, Floridians

---

[3] Plaintiffs anticipate that Morisseau will resist jurisdictional discovery on the grounds that he is merely an officer of LeTransporteur, LLC, and he claims that LeTransporteur owns the Website. [ECF No. 56, ¶ 2].  Plaintiffs have alleged that *Morisseau* knew the article in question was false when *he* decided to publish it, or exhibited reckless disregard as to its truth or falsity. Accordingly, Morisseau cannot hide behind the corporate shield of LeTransporteur, LLC in thwarting jurisdictional discovery by distancing himself, personally, from the activities of the Website that he personally oversees and operates.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (holding that, "under Florida law, [the] corporate shield doctrine is inapplicable where the corporate officer commits intentional torts.")

[4] This roughly translates to "Information website of Haiti and the Diaspora."

constitute a substantial part of the Website's readership, it will go a long way in demonstrating that Morisseau "continuously and deliberately exploit[s]" Florida residents.  *Keeton*, 465 U.S. 781 (finding "minimum contacts" test satisfied where magazine published defamatory article that was substantially circulated in forum state).   Plaintiffs also intend to discover the Website's Google Ads' analytics.  Google Ads is a source of revenue for the Website; perhaps its primary source.  [ECF No. 64-1, ¶ 3].  As the Ninth Circuit has observed, this is important to the jurisdictional analysis: "the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers."  *Mavrix Photo, Inc. v. Brand Technologies, Inc*., 647 F.3d 1218, 1230 (9th Cir 2011) (specific jurisdiction appropriate in California over Ohio corporation and its principal in action by Florida photo agency for copyright infringement occurring on defendants' website).  In *Mavrix*, because the defendants had actual or constructive knowledge about their gossip website's substantial "California user base", it demonstrated that they continuously exploited the California market for commercial gain through advertisements to their readers.  *Id*.  Plaintiffs should likewise be allowed to prove that Morisseau's Website earns a significant portion of its advertising revenue from Florida residents; but Plaintiffs cannot do so without jurisdictional discovery.

Plaintiffs also intend to discover the level of interactivity between the Website and its visitors.  Clearly, the Website allows readers to post comments directly to published articles.  *E.g.*,        http://www.touthaiti.com/diaspora/3115-the-haitian-diaspora-educated-divided-and-disorganized.        It     also     hosts     a     radio     program,     Radio     Tout     Haiti, http://www.touthaiti.com/radio_player.html, and maintains a Facebook account where readers also comment on posts to the Website.  https://www.facebook.com/rtvtouthaiti.   But, Plaintiffs

simply cannot know, without jurisdictional discovery, just how interactive the Website really is. *See Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F.Supp.2d 1130, 1142 (S.D. Fla. 2009) (although too rigid of a test, the *Zippo* sliding scale of a website's interactivity can be used as "a tool to determine the purposeful availment of a defendant to a forum.")

Finally, Plaintiffs intend to discover whether and to what extent Morisseau knew, or had reason to know, that Plaintiff Vorbe is a United States Permanent Resident or had ties to South Florida.  Not that Morisseau's state of mind regarding Vorbe's official status as a Permanent Resident is dispositive.  A state's special interest in exercising jurisdiction over those who commit torts within its borders "extends to libel actions brought by nonresidents.  False statements of fact harm both the subject of the falsehood **and** the readers of the statement.  [A state] may rightly employ its libel laws to discourage the deception of its citizens."  *See Keeton*, 465 U.S. at 776.  Nonetheless, it would certainly weigh heavily in Plaintiffs' favor if discovery shows that Morisseau did, in fact, know that Vorbe was a Permanent Resident or that he would otherwise suffer damage to his reputation here.  *See generally*, *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida.")

### III. Conclusion

For all the foregoing reasons, this Court should permit Plaintiffs leave to take jurisdictional discovery, including paper discovery and Morisseau's deposition, regarding the Website's visitor analytics, its advertising analytics, and Morisseau's knowledge of Vorbe's connections to Florida.  These issues are critical to the jurisdictional analysis; and now that Morisseau has been permitted to file his Affidavit, Plaintiffs have a need for this discovery, which is highly favored in this Circuit.  Plaintiffs request ninety (90) days within which to do so.

Dated: August 8, 2014                Respectfully Submitted,

_____
**Gary S. Betensky**, Esq. (Fla. Bar No. 0434302)
gbetensky@richmangreer.com
**Joshua L. Spoont**, Esq. (Fla. Bar No. 053263)
jspoont@richmangreer.com
RICHMAN GREER, P.A.
One Clearlake Centre
250 Australian Avenue South, Suite 1504
West Palm Beach, Florida 33401
Telephone: (561) 803-3500
Facsimile:   (561) 820-1608
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

_____
**Joshua L. Spoont**, Esq.

## SERVICE LIST
(via CM/ECF e-mail)

Brian W. Toth
Holland & Knight
701 Brickell Avenue, Ste. 3000
Miami, FL 33131
305-374-8500
brian.toth@hklaw.com
elaine.starling@hklaw.com
*Counsel for Defendants*